De Blanc, Syndic, v. Martin.

---

## CHARLES DE BLANC, Syndic, *v.* JOSEPH MARTIN.

The verdict of a jury will not be disturbed, unless manifestly erroneous.

A direct action is not necessary to establish the falsehood of a notarial act; it may be shown collaterally.

A notarial act will be presumed to be correct, unless the evidence leaves no reasonable doubt of the contrary.

Motion for a new trial by plaintiff, in an action to annul a mortgage, on the ground that the clerk of the parish judge, before whom the mortgage was executed, had entered into a conversation with five of the jurors, while they were at dinner, during a recess of the court and before the argument had ended, and told them that if they annulled the mortgage their own mortgages, if they had any, would also be annulled. *Held,* that the motion was correctly overruled, there being no evidence that any fact was communicated which had not been sworn to on the trial, nor that any of the jury were interested in the question.

De Blanc, Syndic, v. Martin.

APPEAL from the District Court of Assumption, *Deblieux*, J.
*Miles Taylor*, for the appellant.
*Ilsley* and *Nicholls*, for the defendant.

BULLARD, J. This is a revocatory action, in which the syndic
of the creditors of Materre seeks to annul a mortgage given by
the insolvent to the defendant, bearing date the 23d July, 1839.
The mortgage purports to have been given to secure the de-
fendant against certain indorsements for the insolvent, together
with a small *avancement d'hoirie*. The plaintiff alleges as grounds
of nullity, that Materre was not at the time indebted to Mar-.
tin, the defendant, nor was the latter liable for his debts as set
forth in the act of mortgage; but that the act was fraudulent,
and intended to deprive the creditors of Materre of their re-
course on said property. The plaintiff further alleges, that Ma-
terre was in insolvent circumstances to the knowledge of Mar-
tin, and that if the latter was a creditor, the act was intended
to give him an unjust preference. It is further alleged, that
the act was not in fact passed on the day it bears date, but
as the petitioner avers, and verily believes, about the month of
November or December of that year, within three months of
the failure of Materre; and that it was fraudulently antedated.

The defendant denies the fraudulent character of the act of
mortgage as alleged, and avers that it was executed in good faith,
and for a valid consideration; and that the endorsements intended
to be secured have since fallen on the respondent by protest, and
that the amounts have been really paid to the holders of the
notes thus endorsed.

The case was submitted to a jury, whose verdict was for the
defendant; and the plaintiff, after an ineffectual motion for a new
trial, appealed.

The act recites endorsements to the amount of $20,250, inde-
pendently of $1500 called an advance, which may be laid out of
view—that is to say, four notes of $2500 each, one of $8850, dis-
counted by Girod, and one of $1400 to the branch of the Gas
Bank at Napoleonville. The evidence shows that the defendant
has been held responsible for the whole of the above amounts.
There was, therefore, a valid consideration for the mortgage, ex-

cept as to the $1500 received by Materre, as part of his wife's portion.

While it is shown that endorsements existed at the date of the mortgage, some of which had been given by the defendant on a promise of Materre, to secure him by mortgage, in his letter of the 8th of July, 1839, it is not proved, on the other hand, that he was otherwise the creditor of Materre at that period. The ground of nullity, therefore, growing out of the relation of debtor and creditor between the parties, and the alleged intention to give and to obtain an unfair preference over other creditors, entirely fails, unless it be shown that the act was, as is charged, antedated. And this brings us to one of the principal questions submitted to the jury, to wit, was the act of mortgage antedated ? Upon this point there is no direct and positive evidence. There are presumptions more or less strong on both sides. In support of the instrument, is the fact that it was passed before the judge of the parish, acting as a notary public, and two witnesses ; and it cannot be lightly presumed, that a public officer would become the accomplice or the instrument of a fraudulent contrivance. It is true it is written upon a separate sheet of paper, and that the inscription in the book of mortgages of the parish consists of an abstract and not a full copy ; the former appears, however, on the book at its appropriate place and date. On the other hand it is rendered improbable, that Materre signed the act in the country on the 23d of July, by showing that checks appear to have been signed by him on a bank in the city, bearing precisely that date. But this improbability is weakened, by showing that men in business having frequent transactions with banks, when about visiting the country, leave checks already prepared with proper dates. Again, it is shown that the act was not recorded in the city until December, although it purports to bear date in July. These conflicting presumptions were submitted to a jury whose verdict it is our duty to respect, unless manifestly contrary to law or evidence. We are not prepared to say, however irregularly the public business may have been conducted in the office of the parish judge, that the jury gave too much weight to the presumption in favor of the verity of notarial acts. Our law does not require, it is true, that they should be.

proved to be false in a direct action; they may be shown to be so collaterally. But, at least, such evidence should be produced as to leave no reasonable doubt.

A motion for a new trial was made on the ground of misconduct of the jury. The plaintiff produced an affidavit of R. B. Blanchard, who swore that on the 19th of May he was at the house of Pierre Blanchard; that five of the jurors in the case, whom he names, were present; that Desiré Le Blanc, the clerk of the parish judge, who had testified in the case, was present; that he entered into conversation with said jurors, and told them that if they should annul the act of mortgage in favor of the defendant, Martin, then their own, if they had any, would also consequently be null; that several jurors listened to the expressions, and said in reply *certainly*, or *certainement*, thus assenting to the proposition. This took place at dinner, during the recess of the court, before the conclusion of the argument. The court, in our opinion, did not err in overruling the motion for a new trial. It did not appear that any fact was communicated to the jury, which had not been stated on oath during the trial. Nor does it appear that any of the jurors had an interest in the question. The clerk of the parish judge urged an argument upon a part of the jury, which had been probably addressed in court to them all by the counsel employed to argue the case. It was a topic not to be neglected in such a case; but might be answered with some plausibility by saying, that the presumption would be more strong against the act, if it were the only one which had been recorded irregularly.

*Judgment affirmed.*